Anna Y. Park, SBN 164242
Sue J. Noh, SBN 192134
Rumduol Vuong, SBN 264392
Jennifer L. Boulton, SBN 259076
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
255 East Temple Street, Fourth Floor
Los Angeles, CA 90012
Telephone: (213) 894-1083
Facsimile: (213) 894-1301
E-Mail: lado.legal@eeoc.gov

Attorneys for Plaintiff
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>SIERRA CREATIVE SYSTEMS, INC. dba ADDRESSERS, and DOES 1-10, inclusive,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT—CIVIL RIGHTS/EMPLOYMENT DISCRIMINATION**<br><br>**JURY TRIAL DEMAND** |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices and to provide appropriate relief to Charging Parties Herminia Esqueda, Amaranda Cedillo, and Ana Palacios (the "Charging Parties") and a class of similarly aggrieved individuals (collectively, the "claimants"). As set forth with greater particularity in paragraphs 15 to 35 of

this Complaint, Plaintiff United States Equal Employment Opportunity Commission ("Plaintiff" or "Commission") alleges that Defendant Sierra Creative Systems, Inc. dba Addressers ("Defendant") unlawfully subjected the Charging Parties and a class of similarly aggrieved individuals to sexual harassment, including *quid pro quo* harassment and/or a hostile work environment, as well as sex-based harassment in violation of Title VII. The Commission also alleges that Defendant further violated Title VII by subjecting the Charging Parties and a class of similarly aggrieved individuals to retaliation.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) ("Title VII") and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Central District of California.

## PARTIES

3. Plaintiff is an agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant has continuously been a corporation doing business in the State of California and the County of Los Angeles, and has continuously had at least 15 employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Section 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

6. At all relevant times, Defendant employed the Charging Parties and a class of similarly aggrieved individuals.

7. All acts and failures to act alleged herein were duly performed by and attributable to all Defendants, each acting as a successor, agent, alter ego, employee, indirect employer, joint

employer, integrated enterprise, or under the direction and control of the others, except as specifically alleged otherwise. Said acts and failures to act were within the scope of such agency and/or employment, and each Defendant participated in, approved, and/or ratified the unlawful acts and omissions by the other Defendants complained of herein. Whenever and wherever reference is made in this Complaint to any act by a Defendant or Defendants, such allegations and reference shall also be deemed to mean the acts and failures to act of each Defendant acting individually, jointly, and/or severally.

8. Plaintiff is ignorant of the true names and capacities of each defendant sued as DOES 1 through 10, inclusively, and therefore Plaintiff sues said defendants by fictitious names. Plaintiff reserves the right to amend the complaint to name each DOE defendant individually or corporately as it becomes known. Plaintiff alleges that each DOE defendant was in some manner responsible for the acts and omissions alleged herein and Plaintiff will amend the complaint to allege such responsibility when the same shall have been ascertained by Plaintiff.

## STATEMENT OF CLAIMS

9. More than thirty days prior to the institution of this lawsuit, Charging Parties Herminia Esqueda, Amaranda Cedillo, and Ana Palacios filed charges of discrimination with the Commission alleging violations of Title VII by Defendant.

10. The Commission conducted an investigation into the allegations in the Charging Parties' charges which included, but was not limited to, seeking documents and conducting interviews.

11. On September 8, 2017, the Commission issued to Defendant Letters of Determination finding reasonable cause to believe that Defendant had violated Title VII as to the Charging Parties and a class of similarly situated individuals. The Commission further invited Defendant to join with it in informal methods of conciliation in a collective effort towards a just resolution.

12. The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letters of Determination.

13. On March 2, 2018, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

14. All conditions precedent to the institution of this lawsuit have been fulfilled.

<u>Statement of Title VII Claims</u>

15. Since at least 2010, Defendant has engaged in unlawful employment practices in violation of Sections 703(a) and 704 of Title VII, 42 U.S.C. §§ 2000e-2(a), 2000e-3 by subjecting the Charging Parties and a class of individuals to sexual harassment, sex-based harassment, and/or retaliation. The unlawful employment practices include but are not limited to those practices described in paragraphs 16 to 35 below.

16. Defendant's business is divided into two main departments—the production department and the printing department. The production department is in charge of such tasks as loading paper and envelopes into the printing machines, operating the machines, as well as sorting, folding, and stuffing material by hand based on customer orders. The printing department, on the other hand, is in charge of such tasks as pre-press and printing operations. Although the two departments are separate, the departments interact with one another to fulfill customer orders. Miguel Islas worked as a supervisor in the production department at Defendant's North Hollywood, California facility and, thereafter, at its Paramount, California facility. As the supervisor of the production department, Islas not only directly supervised claimants who worked in the production department, such as Charging Parties Herminia Esqueda and Amaranda Cedillo, but Islas also interacted with claimants who worked in the printing department, such as Charging Party Ana Palacios. As the direct supervisor to Charging Parties Herminia Esqueda and Amaranda Cedillo and other claimants, Islas controlled their work and controlled their work schedule, including the assignment of hours and/or overtime. In addition to controlling their work and work schedule, Islas intimated to certain claimants that he would tell company President Kent Moon that they should be fired.

///

///

17. Charging Party Herminia Esqueda began working for Defendant in late 2009/early 2010 and worked as a machine operator in Defendant's production department when the unlawful employment practices occurred.

18. Charging Party Amaranda Cedillo began working for Defendant in or around May 2013. Ms. Cedillo worked as a machine operator in Defendant's production department and later worked in Defendant's printing department when the unlawful employment practices occurred.

19. Charging Party Ana Palacios began working for Defendant in or around January 2005. Ms. Palacios worked as a manger and later as a printing technician in Defendant's printing department when the unlawful employment practices occurred.

<u>Sexual and Sex-Based Harassment</u>

20. Supervisor Islas subjected the Charging Parties and a class of aggrieved female employees to severe or pervasive sexual and sex-based harassment. Islas' conduct was unwelcome by the claimants throughout their employment.

21. Supervisor Islas' harassment of Charging Party Ana Palacios began in or around 2010, and his harassment of Charging Parties Herminia Esqueda and Amaranda Cedillo began in or around June 2014. While he was working, Supervisor Islas would look for opportune moments to sexually harass the Charging Parties and other claimants. For example, when the claimants were trying to perform their work at the various printing machines, Islas would routinely and repeatedly invade the claimants' personal space and unnecessarily come up right next to them, brushing his body up against theirs, including with his private parts. While the claimants were working, Islas also would come up close to them and routinely and/or repeatedly graze his elbow along their breasts as well as inappropriately rub their backs, making comments about whether they were wearing bras and thereafter pulling on and/or snapping their bras. Although Islas would sometimes claim that it was an "accidente" (accident), Islas would engage in this type of behavior on a regular or repeated basis, including on a monthly and/or weekly basis at times.

22. In response to Islas' unwelcome behavior, the claimants would object by trying, for example, to move away from him and/or cover their breasts when they were working at the

machines. Charging Party Ana Palacios even tried swatting Islas' arm away from her on multiple occasions. In response to their objections, Islas would state, for example, something to the effect of, "What are you doing?" or "Why are you moving away?" Notwithstanding the claimants' objections and protests, however, Islas continued to subject them to his harassing behavior.

23. In addition to subjecting the claimants to physical sexual harassment, Islas subjected them to unwelcome verbal sexual harassment. As the claimants were working, Islas would batter the claimants, including Charging Parties Herminia Esqueda, Amaranda Cedillo, and Ana Palacios, with inappropriate and offensive names, including, but not limited to "puta"/"zorra" (slut/whore/bitch), "vividora" (opportunist), and/or "mal cojida" (badly fucked). Islas also made myriad inappropriate, offensive, and unwelcome comments to the claimants. For example, in addition to calling Ms. Cedillo the above-noted names, Islas told Ms. Cedillo that she walked like a whore—bent over with her tail to the side and that he would be her pimp and split the proceeds with her. Islas also would make routine, repeated, and inappropriate comments about the claimants' bodies, including referencing the size of their breasts and butts and/or comparing their bodies to those of other female employees. For example, Islas regularly and repeatedly made comments about Charging Party Herminia Esqueda's body, including referring to her breasts as little lemons and making comments about how she had no butt. Similarly, Islas regularly and repeatedly made comments to Charging Party Ana Palacios regarding her body, including telling her that she walks hunched over like a woman with big breasts, asking her why she does not have a butt or where she left her butt, calling her "chichona" (big breasted) and "desculada" (no ass), and referring to her breasts as "bolas" (balls). Islas engaged in such conduct on a regular or repeated basis, including on at least a monthly and/or weekly basis. When the claimants would object to the unwelcome behavior, Islas would dismiss their complaints, stating, for example, something to the effect of, "Why are you complaining? You are not even that good looking."

24. Islas also subjected several claimants to unwelcome *quid pro quo* sexual harassment by propositioning them, intimating that they would be assigned more hours and/or

overtime if they did not object to Islas' unwelcome advances. For example, Islas told Charging Party Herminia Esqueda that she could make more money but she does not, in effect, "cooperate," which Ms. Esqueda understood to mean that if she did not object to Islas' unwelcome advances, he would assign her more hours/overtime. Islas also propositioned Charging Party Amaranda Cedillo after she commented about there being less work available, telling her, in effect, that "things could be different but that it was up to her." Ms. Cedillo understood this to mean that she would be assigned more hours/overtime if she did not object to Islas' unwelcome sexual advances. It was known that Islas assigned extra hours/overtime to those who did not object to his sexual advances.

25. In addition to subjecting the claimants to a sexually hostile work environment and/or *quid pro quo* harassment, Islas subjected the claimants to an unwelcome barrage of abuse based on their sex (female). Instead of referring to the claimants by name, for example, Islas would walk around the facility and routinely and/or repeatedly refer to the female employees individually or collectively as animals, including, but not limited to, "vacas" (cows), "bestias" (beasts), and/or "burras" (donkeys). Islas also routinely compared the female employees to animals, including dogs. For example, Islas stated that women are just like dogs, they are only good to lift their heads—No, at least a dog will lift his head. He also made a comment about loving his dog more than women. In addition, when machinery at the facility would not work or would need to be fixed, Islas would verbally abuse the female employees, telling the claimants individually or collectively that they are, among other things, useless, stupid, ignorant, good for nothing, and/or a bunch of useless idiots. Islas would also subject female employees to offensive and derogatory names, including "puta/zorra" (slut/bitch/whole), "mal cojida" (badly fucked), and/or "vieja" (old lady) or "pinche vieja" (fucking old lady), as well as other offensive statements based on their sex (female) as referenced above. Islas engaged in such unwelcome conduct on a regular or repeated basis, including on at least a monthly or weekly basis. Islas did not subject the male employees at the facility to such unwelcome harassing behavior.

26. Due to Islas' constant and escalating harassment of the claimants, some claimants, including Charging Parties Herminia Esqueda, Amaranda Cedillo, and Ana Palacios, complained

to members of Defendant's management, including, but not limited to, President Kent Moon, Human Resources representative Sameh Attiah, General Manager Cynthia Garcia, and/or Senior Account Manager / Printing Department Supervisor Lucia (aka "Lucy") Zavala, about Islas' discriminatory harassment. Notwithstanding the myriad complaints received, however, Defendant failed to take appropriate remedial action in response to these complaints. As a result, the claimants were subjected to ongoing harassment and/or retaliation thereafter.

27. For example, due to Islas' constant and escalating harassment, Charging Party Ana Palacios complained to Sameh Attia in or around the time Defendant put him in charge of Human Resources. Specifically, in or around 2015, Ms. Palacios complained to Sameh Attia about Islas' harassing behavior, which she described as happening all the time. As Mr. Attiah insisted her complaint be placed in writing and did not appear to keep complaints regarding Islas confidential, Charging Party Ana Palacios thereafter complained on myriad occasions to other members of management, including, but not limited to President Moon and Lucia Zavala, about Islas' harassing behavior. Like Charging Party Ana Palacios, Charging Party Amaranda Cedillo also complained about Islas' behavior on multiple occasions to management. For example, on or about January 19, 2016, Ms. Cedillo submitted a written, notarized complaint to President Moon, complaining about Islas' harassment, including, but not limited to, making persistent derogatory comments to her. As the behavior continued, Ms. Cedillo again complained on or about January 26, 2016, and submitted another written complaint to President Moon regarding Islas' harassment and intimidation. In response to her complaint, Defendant moved Ms. Cedillo to another area in the facility; however, Islas continued to subject the claimants to his harassing and retaliatory behavior. Undeterred by Defendant's failure to appropriately respond to their complaints, the Charging Parties continued to complain about Islas' behavior to management. Ms. Cedillo, for example, complained to President Moon about Islas calling her "zorra/puta" all the time. She also complained about Islas calling her ignorant, and even noted in follow up paperwork that the incident could have been avoided if Moon had put a stop to Islas' constant bullying and harassment that she had reported several times. Like Charging Party Amaranda Cedillo, Charging Party Ana Palacios also complained to President Moon about Islas'

discriminatory behavior. In fact, Moon grew so tired of hearing Ms. Palacios's complaints that he put Lucia Zavala in charge of hearing them for a period of time. Charging Party Herminia Esqueda also complained to management, including President Moon, about Islas' behavior to no avail.

28. When General Manager Cynthia Garcia began to work for Defendant in or around mid-2016, some of the claimants, including Charging Parties Herminia Esqueda and Ana Palacios, went to Defendant's newest member of management with the hope that Ms. Garcia would finally listen to their complaints and stop Islas' unlawful behavior. Again, however, their complaints fell on deaf ears, and Defendant failed to take appropriate remedial action in response to their complaints. Further, and egregiously, when Ms. Esqueda complained to Ms. Garcia, Ms. Garcia laughed and threatened to discharge her, telling Ms. Esqueda that if she did not like the way things were run, then she knew where the door was, and she could stay home.

29. Notwithstanding the myriad complaints made by the Charging Parties, Defendant failed to take sufficient reasonable care to prevent and promptly correct Islas' unlawful behavior. For example, when the Charging Parties would complain to President Moon about Islas' behavior, President Moon's responses, included, but were not limited to: shaking his head, saying he would talk to Islas, suggesting that the Charging Party was at fault, stating that maybe Islas is just a "machista" and suggesting that the Charging Party needed to learn to work with him, and/or moving/demoting the Charging Party. In addition, when the Charging Parties complained to other members of management, those members of management did not take sufficient corrective and preventive measures. In fact, as noted above, General Manager Garcia laughed at and threatened to fire Charging Party Herminia Esqueda following her complaint of harassment. As a result of Defendant's failure to take seriously the Charging Parties' complaints, the discriminatory behavior by Islas continued.

30. As Defendant failed to take appropriate and sufficient remedial measures to prevent and correct Islas' behavior, the Charging Parties resorted to filing complaints with the EEOC. Specifically, Charging Party Amaranda Cedillo filed her complaint with the EEOC in June 2016, alleging, *inter alia*, that she and other female employees had been subjected to

harassment on the basis of sex (female) as well as retaliation. Islas' behavior, however, did not cease. Accordingly, Charging Parties Herminia Esqueda and Ana Palacios thereafter filed similar complaints with the EEOC in September 2016. Notwithstanding the charges filed with the EEOC, of which Defendant received notice, Islas continued to engage in discriminatory behavior for several months after the initial charge was filed.

## RETALIATION

31. When some of the claimants would object to and/or complain about Islas's unwelcome behavior, they were subjected to retaliation, including retaliatory harassment, intimidation, the cutting and/or reduction of their hours/overtime, threats, including threats to be terminated, and/or relocation/demotion.

32. For example, following Charging Party Herminia Esqueda's complaints to management, Islas would, *inter alia*: cut Ms. Esqueda's hours because she had complained; set her machine to a faster pace than that of her co-workers; intimate that he was going to tell President Moon that she should be fired; and/or tell Ms. Esqueda that while she may think that she was making him look bad, President Moon only care about money and since Islas was making a lot of money for Moon, he can treat the employees however he wanted.

33. Likewise, after Charging Party Amaranda Cedillo complained about Islas' behavior, she was subjected to retaliation. For example, after complaining to Defendant, including President Moon, about Islas' harassment, Defendant moved Ms. Cedillo from the production department to the printing department, giving her three months to learn the new work. The printing department work was much more detailed-oriented and difficult, requiring a higher level of precision and care. As a result, it was easier to make errors and was more stressful than the work in the production department. After Defendant moved Ms. Cedillo to the printing department, Islas' bragged to Ms. Cedillo's coworker via text about how Ms. Cedillo was moved and nothing had happened to him following her complaint, texting "HAHAHAHA. Quien rie al ultimo" (Who laughs last). In addition, following Ms. Cedillo's complaints to Defendant, Islas subjected Ms. Cedillo to retaliatory harassment and intimidation by, *inter alia*, threatening her,

including intimating that he was going to have Ms. Cedillo fired, and making repeated negative comments about her and/or the complaints that she made within earshot.

34. Like the other Charging Parties, Charging Party Ana Palacios was also subjected to retaliation. Following her complaints to Defendant's management regarding Islas' unwelcome conduct, for example, Islas subjected Ms. Palacios to intimidation and a hostile work environment, including, but not limited to: saying that she should be fired; calling her offensive names, including, but not limited to, "puta vieja" (fucking old lady"); threatening her, including making multiple death threats; and actively looking for and/or manufacturing errors to report to management about her.

35. In addition, following Charging Party Ana Palacios's myriad complaints to Defendant regarding Islas' harassment, President Moon demoted Ms. Palacios from the position of printing department manager to that of printing technician/operator. At the time of her demotion, Ms. Palacios inquired whether this change was due to her work performance or because of Islas. In response, President Moon paused, and then stated that he thought it was best because of Islas. Thereafter, Ms. Palacios complained to Senior Account Manager / Printing Department Supervisor Lucia Zavala, noting that the demotion was not fair and that the real issue was that Defendant was unable to control Islas. Ms. Zavala agreed but indicated to Ms. Palacios that there was nothing that she could do. Following her demotion, Ms. Zavala, at the direction of President Moon, disciplined Ms. Palacios for a printing error. This marked one of the first times that Ms. Palacios had ever been disciplined by Defendant after having worked there for over a decade. Defendant disciplined Ms. Palacios for the printing error even though it had not similarly disciplined others who had previously made the same error. Thereafter, Defendant hired a new printing department manager who seemed to have less experience than Ms. Palacios.

36. The unlawful employment practices complained of above were intentional.

37. The effect of the practices complained of above has been to deprive the Charging Parties and a class of aggrieved individuals of equal employment opportunities and otherwise adversely affect their status as employees because of their sex (female).

38. The effect of the practices complained of above has been to deprive the Charging Parties and a class of aggrieved individuals of equal employment opportunities and otherwise adversely affect their status as employees because of their engagement in protected activities in opposition to unlawful employment practices.

39. The unlawful employment practices complained of above were intentional and caused the Charging Parties and a class of aggrieved individuals to suffer emotional distress.

40. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of the Charging Parties and a class of aggrieved individuals.

**PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practices in violation of Sections 703(a) and 704(a) of Title VII.

B. Order Defendant to institute and carry out policies, practices, and programs to ensure that they would not engage in further unlawful practices in violation of Sections 703(a) and 704(a) of Title VII.

C. Order Defendant to make whole the Charging Parties and class of aggrieved individuals by providing compensation for past and future non-pecuniary losses, pursuant to Title VII, resulting from the unlawful practices described above, including but not limited to emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life, in amounts to be determined at trial.

D. Order Defendants to make whole aggrieved claimants by providing compensation for any past and future pecuniary losses, including, but not limited to, expenses suffered by them that resulted from the unlawful employment practices described above, in amounts to be determined at trial.

///
///

E. Order Defendant to pay the Charging Parties and a class of aggrieved individuals punitive damages, pursuant to Title VII, for its malicious or reckless conduct as described above, in amounts to be determined at trial.

F. Grant such further relief as the Court deems necessary and proper in the public interest.

G. Award the Commission its costs of this action.

**JURY TRIAL DEMAND**

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Dated: June 12, 2018                Respectfully Submitted

JAMES LEE,
Deputy General Counsel

GWENDOLYN YOUNG REAMS,
Associate General Counsel

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
131 "M" Street, N.E.
Washington, D.C. 20507

By: _____
ANNA Y. PARK,
Regional Attorney

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION